UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

HERBERT E. LIVERMAN, *et al.*,

Plaintiffs,

v.

CITY OF PETERSBURG, *et al.*

Defendants.

Civil Action No. 3:14–CV–139

**MEMORANDUM OPINION**

THIS MATTER is before the Court on a Motion to Alter and Amend Judgment ("Motion"), pursuant to Federal Rule of Civil Procedure 59(e), filed by Plaintiffs Herbert E. Liverman ("Liverman") and Vance R. Richards ("Richards") (collectively, "Plaintiffs"). ECF No. 59. For the reasons stated below, the Court will DENY Plaintiffs' Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

The instant case arose after Plaintiffs were put on probation for posting comments on the social media website, Facebook. On March 5, 2014, Plaintiffs filed a Complaint, alleging several 42 U.S.C § 1983 claims against Defendants. In general, Plaintiffs alleged that Defendants City of Petersburg ("the City") and John I. Dixon, III ("Chief Dixon") (collectively, "Defendants") violated their First Amendment rights by subjecting them to an unconstitutional Social Networking Policy. In particular, Plaintiffs claimed that the City of Petersburg Police Department ("the Department") improperly impinged upon their rights under the Free Speech Clause of the First Amendment by preventing them, through its written policies, from speaking out as citizens regarding matters of public concern and by retaliating against them for seeking to exercise these rights. Defendants denied liability in all respects and, in Chief Dixon's individual capacity, asserted the defense of qualified immunity to Plaintiffs' claims for monetary damages.

Plaintiffs' causes of action were grouped into three categories.  First, Plaintiffs alleged First Amendment violations pursuant to the 2010 Social Networking Policy[1] and 2013 Social Networking Policy.  Second, Plaintiffs claimed that the Department took adverse employment actions against them in retaliation for their comments at issue on Facebook.  Third, Plaintiffs alleged that investigations were opened against them in retaliation for their notice of claims in contravention of the First Amendment.  Plaintiffs sought injunctive relief along with compensatory and punitive damages.  Plaintiffs also sought attorney's fees.

On October 22, 2014, Plaintiffs filed a Motion for Partial Summary Judgment, requesting that the Court find that the 2010 Social Networking Policy and the 2013 Social Networking Policy are unconstitutional. Defendants filed their Opposition on October 31, 2014.   Brief in Opposition to Plaintiffs' Motion for Summary Judgment as to Liability, Declaratory Judgment, and an Injunction as to Counts I and II ("Defs.' Opp'n Mem.").  Subsequently, on November 3, 2014, Plaintiffs filed a Reply.  Reply to Opposition to Plaintiffs' Motion for Summary Judgment ("Pls.' Reply").

On October 27, 2014, Defendants filed a Motion for Summary Judgment as to all counts contained in Plaintiffs' Complaint. Plaintiffs filed their response in opposition on November 6, 2014.  Opposition to Defendants' Motion for Summary Judgment ("Pls.' Opp'n Mem.").  On November 10, 2014, Defendants filed their reply brief.  Reply Brief in Support of Defendants' Motion for Summary Judgment ("Defs.' Reply").

On May 6, 2015, the Court issued an Order and an accompanying Memorandum Opinion, in which it GRANTED IN PART and DENIED IN PART Plaintiffs' Motion for Summary Judgment.  Specifically, the Court found that Liverman's speech at issue regarded a matter of public concern while Richards' speech, in contrast, regarded private matters.  As such, the Court GRANTED Plaintiffs' Motion for Summary Judgment as to Count I of Plaintiffs' Complaint and DENIED Plaintiff's Motion for Summary Judgment as to Count II.  Accordingly, the Court

---

[1] The 2010 Social Networking Policy was not relevant or actionable under the facts.

DENIED Defendants' Motion for Summary Judgment as to Count I and GRANTED Defendants'

Motion for Summary Judgment as to Count II.  The Court then GRANTED Defendants' Motion

for Summary Judgment as to Counts III and IV, finding that Chief Dixon was entitled to

qualified immunity and that no municipal liability attached because the City did not ratify the

2013 Social Networking Policy.  Further, the Court found that the City and Chief Dixon did not

violate Plaintiffs' First Amendment Rights to petition the government for redress by retaliating

against them for noticing their claims.  As such, the Court GRANTED Defendant's Motion for

Summary Judgment as to Counts V and VI of Plaintiffs' Complaint.

On May 20, 2015, Plaintiffs filed the Motion to Alter and Amend Judgment now before

the Court.  Plaintiffs dispute each of the aforementioned rulings against them.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 59(e) governs motions to alter or amend a judgment;

however, the rule does not provide a standard that courts may use to grant such motions.  The

Fourth Circuit articulated "three grounds for amending an earlier judgment:    (1) to

accommodate an intervening change in controlling law; (3) to account for new evidence not

available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Pac. Ins.*

*Co. v. Am. Nat. Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citing *EEPC v. Lockheed Martin*

*Corp.*, 116 F. 3d 110, 112 (4th Cir. 1997); *Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir.

1993).   "Rule 59(e) motions may not be used, however, to raise arguments which could have

been raised prior to the issuance of the judgment, nor may they be used to argue a case under a

novel legal theory that the party had the ability to address in the first instance."  *Pac. Ins. Co.*,

148 F.3d at 403 (internal citations omitted).  Rule 59(e) provides an "extraordinary remedy that

should be used sparingly."  *Id.* (internal citation omitted).

## III.   PARTIES' ARGUMENT

### 1.   WHETHER THE COURT APPLIED THE RIGHT STANDARD AS TO COUNT II

#### i.   Plaintiffs

Plaintiffs do not specifically identify or refer to where they believe the Court erred in its Memorandum Opinion issued on May 6, 2015.  Instead, they generally argue that the Court improperly "adopted the Pickering/NTEU analysis, and concluded based on <u>Harman v. City of N.Y.</u>, 140 F.3d 111, 118 (2d Cir. 1998) that this eliminates any distinction between facial and as-applied challenges, essentially collapsing Counts III IV into Counts 1 and II."  Memorandum in Support of Motion for Summary Judgment as to Liability, Declaratory Judgment, and An Injunction as to Counts I and II of Plaintiffs' Complaint ("Pls.' Mem.") at 1.  Plaintiffs assert the following:

> There is a difference . . . between ***challenges to an employment policy*** limiting a public employer's[2] speech and ***challenges to an individual adverse employment action*** based on a public employer's[3] speech (action not based on a policy).  The latter is judged by the <u>Pickering</u> analysis the Court actually applied.  The former is judged by the distinct <u>Pickering/NTEU</u> the Court purported to apply.

*Id.* (emphasis in the original).  Plaintiffs argue that when the Court addressed their Motion, it misapplied the standard articulated in *Pickering v. Board of Education*, 391 U.S. 563 (1968). Instead, Plaintiffs argue, the Court should have applied the standard articulated by the Court in *Sanjour*, known as the *Pickering/NTEU test.*  If the Court had adopted Plaintiffs' argument, they assert that the Court would have "appropriately look[ed] beyond the particulars of Richard's comments to conclude that the policy unconstitutionally infringes Richard's right to comment as a citizen on matters of public concern."  *Id.* at 3.  Plaintiffs insist that the Court improperly relied on *Sanjour v. EPA*, 56 F.3d 85, 90-91 (D.C. Cir. 1995) and *Harman v. City of*

---

[2] Although Plaintiffs discuss a public *employer's* speech, the Court assumes that Plaintiffs made a typographical error and intended to discuss a public *employee's* speech.  Indeed, the *Pickering* and *NTEU* concern speech made by a public employee, not a public employer.

[3] Here, too, the Court assumes that Plaintiffs made a mistake and intended to discuss speech made by a public employee.

*N.Y.*, 140 F.3d 111, 118 (2d Cir. 1998) to find that Richards' speech on a particular occasion was not speech on a matter of public concern.

### ii.    Defendants' Opposition

Defendants disagree with Plaintiffs' proffered assertion that the Court incorrectly applied the *Pickering/NTEU* standard to Count II of the Complaint.  Defendants argue that "Plaintiffs' own arguments favor the Court's reasoning and ruling."  Defs.' Opp'n Mem.  at 1. Defendants interpret the Court's findings in *Sanjour* differently from Plaintiffs.  Defendants explain that the Court in *Sanjour* begins by explaining that protected government employee speech "must involve 'matters of public concern.'"  *Id.* (quoting *Sanjour*, 56 F.3d at 90) (citation omitted).   From this language, Defendants argue the following:  because the "Court found, correctly, that Richards' speech did not involve a matter of public concern . . . . [and] [b]ecause Richards' speech did not satisfy this prerequisite, the Court did not, as it should not, reach the question of whether the 2013 Social Networking policy wrongfully prohibited Richards' speech." *Id.* at 2.  For these reasons, Defendants argue that the Court's declaratory judgment in favor of Liverman should not be extended in favor of Richards.

### iii.    Plaintiffs' Reply

Plaintiffs' argue that the constitutional validity or invalidity of the 2013 Social Networking Policy is a legal question independent of any adverse employment action subsequently taken against Plaintiffs on a particular occasion in response to particular Facebook comments.  Plaintiffs turn to "*Sanjor v. EPA*, 56 F. 3d 85 (D.E. Cir. 1995)"[4] to support its argument.  Pls.' Reply at 2.  Plaintiffs assert that the Court in *Sanjour* did not look at particular speech, but rather considered whether the challenged regulations prevented the plaintiffs in that case and similarly situated public employees from addressing matters of public concern.  *Id.* Similarly, Plaintiffs argue that the Court's findings in *Harman* demonstrate that it is not necessary for a plaintiff to actually speak on a matter of public concern or be disciplined under

---

[4] Although Plaintiffs continuously cite to "Sanjor v. EPA, 56 F3d 85 (D.E. Cir. 1995), this Court assumes that Plaintiffs are referring to "Sanjour v. EPA, 56 F.3d 85 (D.C. Cir. 1995)."

the policy at issue in order to challenge the policy as restrictive of speech.  Plaintiffs now argue that the proper question when analyzing the validity of a policy regulating speech is not whether a particular communication was or was not a matter of public concern, but rather whether the challenged regulations prevent Plaintiffs and similarly situated public employees from addressing a matter of public concern.

### 2.  MUNICPAL LIABILITY (OR LACK THEREOF)

#### i.   Plaintiffs

Plaintiffs argue that "the Court erred in determining that Chief Dixon is not the final decision maker for the City with respect to the 2013 Social Networking Policy.  Essentially, they focus on Petersburg City Ordinance § 70-36 and Va. Code § 15.2-1701.  Specifically, Plaintiffs acknowledge that it is undisputed that under Petersburg City Ordinance § 70-36, "It shall be the duty of the chief of police to command and supervise the police force of the city under the general direction of the city manager, and to see that the duties of the members of such force, as defined by law and city ordinances, are properly performed."  Plaintiffs, without support, assert that it is of no matter that the city manager provides "general direction" to the chief of police because Chief Dixon can still be "the final decision maker for the City as to General Orders issued regulating the off-duty behavior of City employees—*i.e.*, the City's police officers."  Pls.' Mem. at 5.  Additionally, Plaintiffs contend that the Fourth Circuit's findings in *Stickley v. Sutherly*, 416 Fed. Appx. 268, 273 (4th Cir. 2011) are inapposite because the Petersburg City Manager does not possess the broad reservation of authority that the town manager enjoyed in the *Stickley* case.  They also argue that *Crowley v. Prince George's County, Maryland*, 890 F.2d 683 (4th Cir. 1989) is inapplicable to the instant matter because that case involved a personnel decision whereas the issue, here, was one of commanding and supervising a police force.

#### ii.   Defendants' Opposition

In opposition to Plaintiffs' arguments, Defendants fervently argue that the Court was

correct when it found that Chief Dixon was not a final policy maker.  First, Defendants contend that Plaintiffs ignore the plain language of Petersburg City Ordinances §§ 70-33 and (2), which provide that the Chief of Police and those in the Department serve at the pleasure of the City Manager and, additionally, vest the City Manager with police powers and control of and supervision over the Department.  Defs.' Mem. at 3.  Defendants correctly underscore, "After ignoring these ordinances, Plaintiffs conclude, without authority, that the General Orders of the Chief of Police are municipal policies if an ordinance does not provide for review by city officials."  *Id.*

### iii.    Plaintiffs' Reply

Plaintiffs argue that municipal liability  attached in this case because the 2013 Social Networking Policy was an "express, written, General Order issued by the Chief, who is given by Petersburg City Code § 70-36 the power to 'command and supervise the police force of the city under the general direction of the city manager.'"  Pls.' Reply at 4.  Say Plaintiffs, conclusively, because "it is a written policy established pursuant to a grant of authority by the City Ordinance, it is an express policy of the City."  *Id.*  Plaintiffs then reassert that "Chief Dixon is the final policymaker of the City and the Department with respect to the day-to-day rules and regulations governing the Department, including the establishment of general orders.  His decisions are final, unless perhaps the City Manager overrules the policies."  *Id.*

### 3.  RICHARDS' COMMENTS

### i.    Plaintiffs

According to Plaintiffs, the Court inappropriately considered Richards' comments separate and apart from those Liverman made.  Plaintiffs assert that Richards' comments "ratified and built on Liverman's comments" and were "as much a matter of public concern as Liverman's comments."  Pls.' Mem. at 7.

### ii.    Defendants' Opposition

Defendants argue that, after considering the content, form, and context of Richards' comments, the Court engaged in a "well-reasoned discussion," regarding why Richard spoke on a matter of private, not public, concern. Defs.' Opp'n Mem. at 3. Defendants argue that the Court went through a proper and thoughtful process to arrive to the correct conclusion that Richards' comments fell outside the purview of First Amendment protection. *Id.*

### 4. QUALIFIED IMMUNITY

#### i. Plaintiffs

Plaintiffs insist that the Court erred in determining that qualified immunity protected Chief Dixon with respect to disciplining Liverman and Richards. To support their position, Plaintiffs conclusively argue that "the statements of Liverman (and Richards) are clearly about a matter of public concern." Pls.' Mem. at 7.

#### ii. Defendants' Opposition

Defendants argue, "The comments made by Liverman and Richards were not 'clearly' a matter of public concern, as argued by Plaintiffs." Defs.' Opp'n at 3. To support their position, Defendants look to the Fourth Circuit's findings in *Stickley.* In *Stickley,* the Fourth Circuit explained that the determination of whether a comment is of public or private concern is very fact-intensive and the balancing of interests very subjective. *Id.* at 3 (citing *Stickley,* 416 Fed. Appx. at 272). Defendants argue that this Court heeded the Fourth Circuit's directive and thus asserts that this Court correctly determined Chief Dixon is entitled to qualified immunity.

### 5. THE COURT'S DETERMINATION AS TO THE NOTICE OF CLAIMS ALLEGATIONS

#### i. Plaintiffs

Without support, Plaintiffs argue that the "Court further erred in finding that the discipline following Plaintiff's notice of claims was not pretextual, especially as the Chief of Police exercised extensive control over the internal investigation process." Pls.' Mem. at 8. According to Plaintiffs, "[f]airly considered, the internal investigations were fishing expedition."

*Id.* To support their position, Plaintiffs argue, in part, the following:  (1) "[t]he first investigation had an unlimited timeframe and a broad scope"; (2) "[t]he second investigation against Liverman involved the Chief of Police summarily directing a sergeant to discipline Liverman"; (3) "[t]he investigation concerning Richards was baseless . . . [and] [t]he fact that it was dismissed with no finding of fault does not mean it was not retaliatory or damaging"; and (4) "[t]he second investigation purported to investigate one issue but punished him on a separate issue." *Id.*

### ii.   Defendants' Opposition

In essence, Defendants argue that the Court was presented with undisputed facts, showing that that most of the investigations cited by Plaintiffs as the bases of their claims alleged in their Complaint were made by fellow officers.   Defendants proffered evidence, demonstrating how Liverman's counsel made a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, which led to the discovery of inappropriate emails.   Further, Defendants argue that Liverman even admitted, in writing, that he engaged in sexual relations "on department time and on and in department property."   Defs.' Opp'n Mem. at 4.   Say Defendants, Plaintiffs fail to raise any new facts or arguments to justify the Court's reconsideration or amendment of its decision on these claims.

### iii.   Plaintiffs' Reply

Plaintiffs argue that "the Court misinterpreted various facts."   Pls.' Reply at 7.   For example, Plaintiffs contend that the Court erred in finding that it "became clear that Liverman was having sex on the job and using Department property to engage in sexual conduct."   ECF No. 54 at 35.   Plaintiffs argue that the Court ignored evidence of pretext, arguing that other officers were disciplined for having sex on the job and Liverman's punishment was disproportionate by comparison.   *See id.*

### 6.  INJUNCTIVE RELIEF

###### i.     Plaintiffs

Plaintiffs assert that the "Court erred in refusing an injunction merely because it was not explicitly addressed" in their moving papers.  *Id.* at 8.  As to Richards, Plaintiffs submit that he should be entitled to an injunction since he remains subject to the 2013 Social Networking Policy as long as he remains employed with the Department.  Additionally, Plaintiffs assert, "Richards and Liverman are also entitled to injunctive relief to have their discipline for violating the policy stricken from their personnel files, and not used in any personnel or disciplinary decisions."  In the alternative, Plaintiffs now argue that the Court should hold an evidentiary hearing on the issue of whether the prerequisites for an injunction exist in this case.

###### ii.     Defendants' Opposition

In short, Defendants argue that Plaintiffs failed to request injunctive relief in their moving papers and did not argue the elements necessary to support such relief.  As such, Defendants insist that Plaintiffs cannot now argue that the Court erred to give them the relief they failed to initially request.  Therefore, Defendants ask that the Court not alter or amend its decision to deny injunctive relief.

## IV.   ANALYSIS

The first two grounds found in *Pacific Insurance* are inapplicable to Plaintiffs' Motion. Therefore, the Court must determine whether its May 6, 2015 Order must be amended "to correct a clear error of law or prevent manifest injustice."

Plaintiffs' arguments for amending the Court's judgment are unpersuasive.  Plaintiffs assert the following arguments.  First, Plaintiffs assert that the "Court erred in its application and interpretation of the appropriate standard as to Counts I through IV, especially as to Counts I and II."  Pls.' Mem. at 1.  Further, as to municipal liability, Plaintiffs assert that the "Court erred in determining that the Chief is not the final decision maker for the City with respect to the 2013 Social Networking Policy."  *Id.* at 4.  Plaintiffs then argue that the "Court erred in finding that Richards spoke on a matter of purely private concern" because it inappropriately

considered Richards' comments separate and apart from those made by Liverman.  *Id.* at 6.

Moreover, Plaintiffs argue that the "Court erred in determining the [sic] that qualified immunity

protected Chief Dixon with respect to disciplining Liverman (or Richards)."  *Id.* at 7.  Plaintiffs

also contend that the "Court erred in finding that the discipline following . . . [Plaintiffs'] notice

of claims was not pretextual, especially as the Chief of Police exercised extensive control over the

internal investigation process."  *Id.* at 8.  Finally, Plaintiffs also assert that the "Court erred in

refusing an injunction merely because it was not explicitly addressed" in their moving papers.

*Id.* at 8.  The Court will address Plaintiffs' arguments in chronological order.

### 1.  WHETHER THE COURT APPLIED THE RIGHT STANDARD AS TO COUNT II

As far as the Court can decipher, Plaintiffs take issue with the Court's footnote in its May

6, 2015 Order, which provided the following:

> To the extent Plaintiffs assert any facial, as applied, or overbreath challenges to the 2013 Social Networking Policy, or rely upon the Supreme Court's prior restraint doctrine, this Court follows the approach taken in other courts, which have indicated that these claims merge into the *Pickering/NTEU* analysis.  *See Harman v. City of N.Y.*, 140 F.3d 111, 118 (2d Cir. 1998) ("[U]nder the *Pickering/NTEU* test[,] the distinction between facial as-applied constitutional challenges becomes unimportant"); *Weaver v. United States Info. Agency*, 87 F.3d 1429, 1440 (D.C. Cir. 1996) (holding that the special concerns implicated by prior restraints can be addressed in the *Pickering* analysis).

ECF No. 54 at 11 n.14.

First, Plaintiffs argue "that the constitutional validity of invalidity of the 2013 Social

Networking Policy is a legal question independent of any adverse employment action

subsequently taken against . . . Plaintiffs on a particular occasion in response to particular

Facebook comments."  Pls.' Reply at 1.  Second, they add that "[i]f it was unconstitutional to

establish the [2013 Social Networking] Policy, then the establishment of . . .  [that policy]

violated the rights of both Liverman and Richards, as they were both subjected to the Policy.

Finally, Plaintiffs maintain that *Sanjour* and *Harman* stand in opposition to the Court's analysis

in this case.

Plaintiffs' argument—that being, the Court applied the wrong test on the issue of public concern in Count II because whether adverse employment action was taken is of no matter in assessing the constitutionality or unconstitutionality of the 2013 Social Networking Policy—is unavailing.  First, the Court's own analysis mirrors a great deal of that contained in Plaintiffs' moving papers.  For example, in Plaintiffs' brief in support of their motion for partial summary judgment as to Counts I and II, Plaintiffs set forth the following road map for the Court:

> This claim alleges that the Defendants enacted a policy that threatened unconstitutional discipline. Adverse employment action violates a public employee's right to free speech if: (1) the employee spoke as a citizen on a matter of public concern, (2) the employee's and public's interests in the First Amendment expression outweighs the employer's legitimate interest in the efficient operation of the workplace, if that interest was infringed by the communication, and (3) the protected speech is a substantial factor in the decision to take adverse employment action.

Pls.' Mem. at 9-10 (citing *Smith v. Gilchrist*, 749 F. 3d 302, 308 (4th Cir. 2014); *Love-Lane v. Martin*, 355 F.3d 766, 776 (4th Cir. 2004)).  Plaintiffs then asserted that Counts I and II alleged that "Defendants imposed an unconstitutional Social Networking Policy, chilling employees' free speech." *Id.* at 11.  To be clear, Plaintiffs then asserted one main argument—"As detailed below, . . . [the 2013 Social Networking Policy] of the Petersburg Police Department . . . each have four elements that place them in violation of *clearly established law*." *Id.* at 12 (emphasis added).  Thus, in their initial moving papers, Plaintiffs argue the 2013 Social Networking Policy is unconstitutional because it "expressly" misrepresents that its provisions are "*consistent* with established case law," *id.* at 20, despite having the following four flaws:

> First, these policies ignore any distinction between official speech as a citizen.  "Second, in place of the case-by-case balancing-of-interests mandated under the First Amendment case law for speech on matters of public concern, these policies substitute bright line exceptions to the First Amendment's protections.  Third, the policies impose bright-line, content-based prohibitions on certain speech without clearly exempting speech about matters of public concern, and misrepresents these prohibitions as consistent with the established case law. Finally, these policies threaten disciplinary action based on overly broad and ambiguous policies.

*Id.* at 12.  Plaintiffs rely on the "*leading case* of <u>Pickering v. Board of Education</u>" to support their position that "this case [involves] . . . policies that purport to authorize what the Supreme [Court] disavowed in <u>Pickering</u>."  *Id.* at 21 (emphasis in original).  In case there was any confusion, Plaintiffs provide that "[t]he core question for the Court under this motion for summary judgment is whether Defendants' . . . 2013 Social Networking Polic[y] . . . [is] consistent with the Constitutional standards established in the case law.  They are not."  Reply to Opposition to Plaintiffs' Motion for Summary Judgment ("Pls.' Reply Defs.' Opp'n Mot. for Summ. J.") at 4.  Plaintiffs then expressly reassert the elements required to establish a claim for adverse employment action.  *Id.*

Plaintiffs now attempt to raise arguments not contained in their initial moving papers requesting partial summary judgment.  Plaintiffs now rely on the approach taken under the *Pickering/NTEU* balancing test, which the Court cited in its footnote, to formulate their argument that serves as the basis for the instant Motion.  However, it well-established that "Rule 59(e) motions may not be used to raise argument which could have been raised prior to the issuance of the judgment. . . ."  *Pac. Ins. Co.,* 148 F.3d at 403.  Plaintiffs extrapolate legal arguments and authority from the Court's Memorandum Opinion to form new arguments.  Plaintiffs' argument concerning the Court's two citations to *Sanjour* fails because *Sanjour* was not dispositive here.  Likewise, the Court's sole citation to *Harman* in a footnote in the Court's Memorandum Opinion did not form any basis of the Court's decision as to the facts of the instant matter.  Plaintiffs, therefore, fail to demonstrate a clear error of law or clearly establish a manifest error of law.

### 2.  MUNICPAL LIABILITY (OR LACK THEREOF)

Plaintiffs argue that the Court erred in determining that the Chief is not the final decision maker for the City with respect to the 2013 Social Networking Policy.  Plaintiffs also assert, without authority, that the General Orders of the Chief of Police are municipal policies if an ordinance does not provide for review by city officials.

However, Rule 59(e) motions should not be used as opportunities to rehash issues already ruled upon because a litigant is displeased with the result. *See Hutchinson v. Staton*, 994 F.2d 1076, 1082 (4th Cir. 1993) (stating that "mere disagreement does not support a Rule 59(e) motion"); *see also Consulting Eng'rs, Inc. v. Geometric Software Solutions & Structure Works LLC*, 2007 WL 2021901, at *2 (D.S.C. July 6, 2007) ("A party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motion should not be used to rehash arguments previously presented or to submit evidence which should have been previously submitted.").

Upon review, the Court is not convinced that it should reconsider the judgment based on the arguments Plaintiffs advance since they have already been considered and rejected.

### 3. RICHARDS' COMMENTS

Plaintiffs argue that the Court erred in finding that Richards spoke on a matter of private concern. Plaintiffs contend that "the Court places undue emphasis on the idiom Richards uses instead of the substance of his statement in analyzing whether this is a matter of public concern." Pls.' Mem. at 6. Additionally, Plaintiffs insist that the Court inappropriately considered Richards' comments separate and apart from those made by Liverman. *Id.*

However, the facts clearly show otherwise. Plaintiffs' proffered assertions do not demonstrate a clear error of law or manifest injustice on the part of this Court. *See* ECF No. 54 at 17, 18. "'[Mere disagreement does not support of a Rule 59(e) motion' on the ground of clear error of law." *Acevedo v. Colvin*, No. CIV.A. 0:12-2137-TMC, 2014 WL 3798813, at *1 (D.S.C. Aug. 1, 2014) (quoting *United States ex rel. Becker v. Westinghouse Savannah River Co.*, 305 F. 3d 284, 290 (4th Cir. 2003)

### 4. QUALIFIED IMMUNITY

Plaintiffs argue that the Court erred in determining that qualified immunity protected Chief Dixon with respect to disciplining Liverman and Richards. In support of its position, Plaintiffs asserts that "the statements of Liverman (and Richards) clearly were about a matter of

public concern." Pls.' Mem. at 7. This Court disagrees. Indeed, "[W]here a sophisticated balancing of interests is required to determine whether the plaintiff's constitutional rights have been violated, only infrequently will it be 'clearly established' that a public employee's speech on a matter of public concern is constitutionally protected." *Stickley*, 416 Fed. Appx. at 272 (quoting *McVey v. Stacy*, 157 F. 3d 271, 277 (4th Cir. 1998)) (citation omitted)). Further, it is well settled that a motion to reconsider cannot appropriately be granted where the moving party simply seeks to have the Court "rethink what the court has already thought through—rightly or wrongly." *In re Yankah*, 514 B.R. 159, 165 (E.D. Va. 2014) (Spencer, J.) (quoting *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D.Va.1983)). Here, Plaintiffs' Motion merely asks the Court to rethink what it already thought through. Plaintiffs have not established that the Court's holding that Chief Dixon is entitled to qualified immunity is contrary to law or manifestly injustice.

### 5. THE COURT'S DETERMINATION AS TO THE NOTICE OF CLAIMS ALLEGATIONS

Plaintiffs argue that the Court "erred in finding that the discipline following the Plaintiff's notice of claims was not pretextual . . . ." Pls.' Mem. at 8. Specifically, Plaintiffs argue that his Court "misinterpreted various facts" in reaching its conclusion. Pls.' Reply at 7. Plaintiffs fail to demonstrate a legally sufficient basis for warranting reconsideration of the Court's findings. But the Court carefully considered the undisputed evidence proffered to reach its conclusion. And, the Court was not guided by erroneous legal principles and did not rest on clearly erroneous factual findings. Further, Plaintiffs have not cleared the high hurdle of the manifest injustice standard as to these claims.

### 6. INJUNCTIVE RELIEF

Finally, Plaintiffs argue that "the Court erred in refusing an injunction merely because it was not explicitly addressed in the summary judgment motions." Pls.' Mem. at 8. Plaintiffs' arguments are unpersuasive. Plaintiffs failed to request injunctive relief in their moving papers

and failed to argue the necessary elements to support such relief.  Plaintiffs cannot now argue that the Court erred to give them relief they failed to request.  Plaintiffs do not establish a legally sound basis to alter or amend its judgment in this regard.

V.     **CONCLUSION**

For the aforementioned reasons, the Court will DENY Plaintiffs' Motion.  ECF No. 59.

Let the Clerk send a copy of this Memorandum Opinion to all counsel of record.   An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this __1st___ day of September 2015.