

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

HERBERT E. LIVERMAN, *et al.*,

Plaintiffs,

v.

CITY OF PETERSBURG, *et al.*

Defendants.

Civil Action No. 3:14–CV–139

## MEMORANDUM OPINION

THIS MATTER is before the Court on a Motion in Support of Attorney's Fees ("Motion") filed by Plaintiff Herbert Liverman. ECF No. 56. Defendants, City of Petersburg (the "City") and John I. Dixon, III, Chief of the Petersburg Police Department ("Chief Dixon") oppose the Motion. For the foregoing reasons, the Court will GRANT IN PART and DENY IN PART Liverman's Motion.

### I. BACKGROUND

On October 22, 2014, Plaintiffs filed a Motion for Partial Summary Judgment, requesting that the Court find that the 2010 Social Networking Policy and the 2013 Social Networking Policy are unconstitutional. Defendants filed their Opposition on October 31, 2014. Subsequently, on November 3, 2014, Plaintiffs filed a Reply.

On October 27, 2014, Defendants filed a Motion for Summary Judgment as to all counts contained in Plaintiffs' Complaint. Plaintiffs filed their response in opposition on November 6, 2014. On November 10, 2014, Defendants filed their reply brief.

To recall, Plaintiff Herbert Liverman ("Liverman") and Vance Richards ("Richards") each sought $ 2 million in compensatory damages, $350,000 in punitive damages, injunctive relief to prevent future violations, and a declaratory judgment which declared the 2013 Social

Networking Policy unconstitutional and void.  Count I regarded Liverman's § 1983 claim for violation of his First Amendment rights when the 2013 Social Networking Policy was created. Count II was Richards' claim for the same violation.  Count II was Liverman's § 1983 claims for retaliation for making his Facebook posts and Count IV was Richards' claim for the same.  Count V alleged Liverman's § 1983 claim for retaliation for noticing his potential legal claims and Count VI was Richards' claim for the same.  All of these claims were made against Chief Dixon and against the City of Petersburg.

After considering cross motions for summary judgment, the Court, on May 6, 2015, granted Liverman declaratory judgment, holding that his First Amendment rights were violated under Count I.  The Court denied Richards' claims under Count II and Count IV.  The Court denied the claims made by both Liverman and Richards under Counts V and VI.  Finally, the Court denied any claims against the City of Petersburg under a municipal liability theory and the Court granted Chief Dixon qualified immunity.

On May 20, 2015, Liverman filed the instant Motion.  ECF No. 56.  Defendants filed an Opposition on May 29, 2015.  ECF No. 65.  Liverman filed a Reply on June 1, 2015.  ECF No. 66.

## II.   LEGAL STANDARD

In determining reasonable attorneys' fees, courts must first calculate the lodestar amount.  *Grissom v. Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008).  The lodestar amount is "the product of reasonable hours times a reasonable rate."  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  The lodestar amount is presumptively reasonable, but may be adjusted based on the circumstances of the case.  *Id.*  The Supreme Court cautions, however, that upward adjustments "are proper only in certain rare and exceptional cases, supported by both specific evidence on the record and detailed findings by the . . . courts."  *Id.* (internal citation and quotation marks omitted).

In determining a reasonable fee, the Fourth Circuit also directs district courts to consider the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19

2

(5th Cir. 1974), and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216,
226 (4th Cir. 1978) and *Allen v. United States*, 606 F.2d 432, 435 (4th Cir. 1979). *In re Abrams
& Abrams, P.A.*, 605 F.3d 238, 244 (4th Cir. 2010). The twelve factors are:

> (1) the time and labor required in the case, (2) the novelty and difficulty of the
> questions presented, (3) the skill required to perform the necessary legal services,
> (4) the preclusion of other employment by the lawyer due to acceptance of the
> case, (5) the customary fee for similar work, (6) the contingency of a fee, (7) the
> time pressures imposed in the case, (8) the award involved and the results
> obtained, (9) the experience, reputation, and ability of the lawyer, (10) the
> 'undesirability' of the case, (11) the nature and length of the professional
> relationship between the lawyer and the client, and (12) the fee awards made in
> similar cases.

*Id.* (citing *Allen*, 606 F.2d at 436 n.1).   The Eastern District of Virginia requires parties
requesting attorneys' fees to submit proper documentation of the number of hours each attorney
spent on the case. *See EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 573 (E.D. Va. 1988)
("[p]roper documentation is the key to ascertaining the number of hours reasonably spent on
legal tasks. Fee claimants must submit documentation that reflects reliable contemporaneous
recordation of time spent on legal tasks that are described with reasonable particularity."). A
court can reduce or deny the requested award if the requesting party does not submit the proper
documentation. *Id.*

## III.   PARTIES' ARGUMENTS

### a. Liverman

Liverman argues that he prevailed on Count I on his claims because he obtained a
declaratory judgment from this Court that the 2013 Social Networking Policy unconstitutionally
restricted his First Amendment rights as to his Facebook posts.  Because the Court's finding
invalidates the discipline administered to him for his Facebook posts and expunges said
discipline from his employment record, Liverman believes that the Court's findings changed the
legal relationship between him and Defendants.

As to the twelve factors, Liverman first turns to the time and labor expended component.
Liverman asserts that the total time expended in this case, including that of attorneys,

paralegals, and legal assistants, is approximately 500 hours. As to the novelty and difficulty of the questions presented, Liverman argues that the legal analysis involved in First Amendment claims, especially those involving the *Pickering* balancing test, are very complex and more difficult to prosecute than ordinary tort claims. Liverman then addresses the skill required to perform the necessary legal services factor, arguing that complex First Amendment employment claims are extremely difficult and require attorneys to have a detailed understanding of case law before prosecuting such claims. Regarding the preclusion of other employment by the lawyer due to acceptance of the case, Liverman briefly reasserts that this case captured about 500 hours worth of labor. As to the customary fee for similar work, Liverman represents that the fees charged in this case were at least commensurate with fees typically charged in similar cases. There was no contingency fee in this matter so the sixth factor is inapplicable here. Liverman admits that the time limitations imposed by the client or circumstances is not a meaningful factor in this case. As to the amount in controversy and results obtained, Liverman states that this factor will be addressed in the forthcoming third step of the fee calculation. Additionally, Liverman argues that the experience, reputation, and ability of the attorney factor is discussed in consideration of the reasonableness of the rates. Liverman argues that this case is undesirable in the local legal community because it involves a lawsuit against a city and its chief of police. According to Liverman, criminal attorneys who represent clients in the community understandably wish to maintain working relationships with the local police department. Liverman represents that the nature and length of the professional relationship between attorney and client is not a significant factor. Finally, Liverman argues that the fees requested in this case are commensurate with fees awarded in similar § 1983 and First Amendment cases.

As to the amount of the requested fees and costs incurred in connection with Plaintiffs' summary judgment motions and trial preparation, Liverman seeks $106,170.00 to $117,354.00 in attorneys' fees and $1,892.98 in costs. Liverman's lawyer, Andrew T. Bodoh ("Bodoh"), charges an hourly rate of $265. Thomas Roberts ("Roberts"), who also worked on this matter

4

for Liverman, charges an hourly rate of $400 to $500, but charged $400 in this case. Johnathan Arthur ("Arthur") also assisted as Liverman's counsel and he charges $225 per hour. Liverman counsel also included Brett Mooney ("Moony"), who charges an hourly rate of $165. Liverman asserts that the remainder of the attorney's fees represents the fees of other support staff, including one additional paralegal with a Juris Doctorate and experience as an attorney as well as legal assistants, who charge hourly rates of $50 to $55. Liverman's counsel submits that their hourly rates are reasonable and assert that the time spent in this case—*i.e.*, approximately 500 hours, was reasonable considering the foregoing twelve (12) factors and the fact that two plaintiffs were prosecuting their claims. Liverman adds that, while this case did not proceed to trial, it involved extensive and reasonably necessary preparations. According to Liverman, the total lodestar amount is as follows:

| Name | Rate | Hours | Total |
|---|---|---|---|
| Andrew T. Bodoh, Esq. | 367.2 hours | $265/hr. | $97,308.00 |
| Thomas H. Roberts, Esq. | 18.85 hours | $400/hr. | $7,540.00 |
| Jonathan Arthur, Esq. | 17.7 hours | $225/hr. | $3,982.50 |
| Bret Mooney, Esq. (attorney) | 15.5 hours | $225/hr. | $3487.50 |
| Bret Mooney, Esq. (paralegal) | 18.0 hours | $165/hr. | $2970.00 |
| Frederick Marsh (paralegal) | 1.4 hours | $165/hr. | $231.00 |
| Sammie Griffin (legal assistant) | 29.7 hours | $50/hr. | $1,485.00 |
| Mary Culp (legal assistant) | 7.0 hours | $50/hr. | $350.00 |
| **TOTAL** | **475.35** | | **$117,354.00** |

After determining the lodestar amount, the Court must subtract the time incurred as a result of the unsuccessful claims unrelated to the successful claims. Liverman maintains that Counts I and III were treated as substantially related with regards to time spent by counsel. Liverman also states that because Richard's was disciplined under the same policy for comments on the same string of posts, there was little work on Counts II and IV that was unrelated to Count I. As such, Liverman submits the following total reductions:

| Name | Rate | Hours | Total |
|---|---|---|---|
| Andrew T. Bodoh, Esq. | $265 | 37.3 | $9,884.50 |
| Thomas H. Roberts, Esq. | $400 | 0.4 | $160.00 |
| Jonathan Arthur, Esq. | $225 | 1.6 | $360.00 |
| Bret Mooney, Esq. (attorney) | $225 | 2.1 | $472.50 |
| Bret Mooney, Esq. (paralegal) | $165 | 1.8 | $297.00 |

5

| | | | |
|---|---|---|---|
| Sammie Griffin (legal assistant) | $50 | 0.2 | $10.00 |
| **TOTAL** | | **43.4** | **$11,184.00** |

Liverman's legal team submitted declarations in support of the request for attorneys' fees and costs.

As to the reduction based on overall success, Liverman proposed that the amount of reduction, if any, should not exceed twenty (20) percent. To support Liverman's argument, he argues that the majority of the discovery focused on issues related to this discipline for the Facebook posts, rather than on Counts V and VI. The number of documents used and relied upon in the Plaintiffs motion for summary judgment, which did not pertain to Counts V and VI, supports his position. He also argues that discovery concentrated instead on the development of the 2013 Social Networking Policy.

Based on the foregoing, Liverman contends that the appropriate fee award would be no less than $84,936, which is a twenty (20) percent reduction of $106,1700 (*i.e.*, the difference between $117,354.00 and $11,184.00).

### b. Defendants

Defendants assert that, at the outset, the Court must determine whether Liverman is a prevailing party. Say Defendants, he is not because the Court's declaratory judgment, while satisfying Liverman's desire to prove a point, does not make him a prevailing party. Defendants argue that the legal relationship between Liverman and Chief Dixon is not materially altered. Defendants claim that the declaratory relief Liverman obtained does not directly benefit him, affect the behavior of Chief Dixon toward Liverman, or otherwise materially alter their relationship. To support their position, Defendants highlight that Liverman is no longer an employee of the police department and, as such, he is no longer subject to any social networking policy issued by the Petersburg Police Department. For the foregoing reasons, Defendant asks that the Court find that Liverman was not a prevailing party for purposes of § 1988 and, thus, cannot recover attorneys' fees.

Even if the Court determines that Liverman was a prevailing party for the purposes of § 1988, Defendants argue that the Court's consideration of Liverman's overall success weighs in favor of a substantial reduction in the amount of fees sought by Liverman. Defendant acknowledges that Liverman prevailed on Count I. But Defendants also argue that Liverman did not obtain injunctive relief and did not prevail on any claims against the City or against Chief Dixon on Count V. Next, Defendants argue that if the Court considers Liverman's limited success in this case as compared to what Liverman originally sought in this case, it should substantially limit any attorneys' fees award. According to Defendants, the request for attorneys' fees ranging between $ 84,936.00 and $106, 170.00 is not reasonable given Liverman's limited success.

## IV.   ANALYSIS

Title 42, United States Code, § 2000e-5(k) provides that a "prevailing party" should recover reasonable attorneys fees. The Supreme Court defines a "prevailing party" as "one whose lawsuit has effected a 'material alteration of the legal relationship of the parties.'" *Buckhannon Board and Care Home, Inc. v. West Virginia Dep't of Health and Human Services*, 532 U.S. 598, 604-05 (2001)(quoting *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 792-93 (1989)). "A defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the judicial imprimatur on the change." *Buckhannon*, 532 U.S. at 605. Without a "material alteration in the legal relationship of the parties," there can be no prevailing party and thus no award of attorney's fees. *Id.* at 604-05.

A "material alteration" requires a party to receive an enforceable judgment on the merits or a court-ordered consent decree. *Id.* A private settlement agreement, however, does not "entail the judicial approval and oversight involved in consent decrees," and thus, does not constitute the required material alteration in the legal relationship of the parties. *Id.* at 605.

7

Accordingly, an award of attorney's fees may not be authorized for the enforcement of a private settlement agreement.

Liverman did prevail on Count I and received a declaratory judgment. The judgment will have limited impact on Liverman because he is no longer employed by the Police Department. His success in the litigation as compared to what was alleged and sought in the Complaint is minimal, at best. He prevailed against only one of two Defendants on one of six claims.

## V.    CONCLUSION

For the foregoing reasons, the Court will GRANT IN PART and DENY IN PART Liverman's Motion. ECF No. 57. The Court will award attorneys' fees of $14,156.00 (this is 1/6 of the $84,936.00 amount sought by Liverman).

Let the Clerk send a copy of this Order to all counsel of record.

It is SO ORDERED.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___9___ day of September 2015.

8